KEICHER *v.* MYSINGER, ADM'R, *et al.*

(*Knoxville,* September Term, 1946.)

Opinion filed November 30, 1946.

Rehearing Denied January 11, 1947.

MILLIGAN and HAYNES, of Greeneville, for complainant.

DALE A. MYSINGER and LEON E. EASTERLY, both of Greeneville, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Maude Keicher, the widow of John Keicher, against the administrator and heirs of the deceased, who died intestate, to recover her homestead and the widow's allowance from his estate. As a predicate to the relief sought, she seeks to set aside a divorce obtained by him a few years ago. The chancellor decreed in her favor. The Court of Appeals reversed the chancellor's decree in greater part, allotting to the woman a one-half interest in property which she and her husband had owned as tenants by the entirety. Both sides filed petition for *certiorari*.

The complainant and her husband fell out about 1937 and she left him. She had previously qualified as the administratrix of a relative leaving a small estate, giving bond with her husband and Mr. Kilgo as sureties. The parties resided in Greeneville. After leaving him, a short while thereafter she returned to visit relatives. While there the husband swore out a warrant for her arrest, charging defalcation on her part as administratrix aforesaid. She was placed in jail where she remained about 12 days.

An arrangement was made for her release which will hereafter appear, and after her release she filed a bill against her husband for divorce, seeking alimony, etc. Upon filing this bill she appears to have left Greeneville again. After she left, her husband answered the bill and filed a cross bill against her charging adultery. Service of this cross bill was accepted by the attorney whom she had employed to file her divorce bill. On this cross bill the husband was granted a divorce and a decree entered vesting him with title to all property owned jointly by them, including the house and lot in which they had lived and owned as tenants by the entirety. Her bill was dismissed.

Mrs. Keicher alleges in the present bill that her attorney was without any authority to accept service of this cross bill for her, that the decree of the chancellor rendered on the cross bill was void for lack of jurisdiction and this contention the chancellor sustained. This is the principal question in the case.

Section 10403 of the Code is as follows: "In case a cross bill or such an answer in the nature of a cross bill be filed, process and copies shall be issued and served on all material cross-defendants named therein."

An attorney employed to bring suit does not by virtue of that employment have authority to accept service in a cross action brought by the defendant. This is fully apparent from decisions of this Court in *Lawson v. American Laundry Machinery Co.*, 165 Tenn. 180, 54 S. W. (2d) 712, and *Essenkay Co.* v. *Essenkay Sales Co.*, 132 Tenn. 287, 177 S. W. 1157.

Such substituted service is only permitted because of the necessities of the case when the defendant to the cross complaint cannot be reached. The court, however, is the judge of this necessity, not counsel for either of the parties nor either of the parties themselves. In *Essenkay* v. *Essenkay Sales Co., supra*, it was said: "An order of the court must be made allowing the substituted service, as a preliminary thereto, and such order or a copy thereof must be served with the process, and copy of the bill, and it must be stated in the order that it is to be so served. 1 Dan. Ch. Pr., marg. p. 449. The application for the order may be an *ex parte* motion, supported, when necessary, by affidavit showing the efforts that have been made to effect service. That all practicable means have been exhausted, and showing how the substitute service is to be effected. Id. But, of course, where the parties to be served, the complainants in the original bill, are non-

residents, and represented by resident counsel, this need only be shown.''

There was no effort to obtain such an order in the case before us. The rule just quoted was expressly approved in *Lawson* v. *American Laundry Machinery Co.*, *supra.*

■■ An attorney, of course, can be authorized to accept service of process for his client, whether it be service on an original bill or on a cross bill. From the testimony of Mr. Wallin, the attorney employed to file the divorce bill for Mrs. Keicher, the Court of Appeals concluded that he was empowered by her with authority to accept service on the cross bill filed by her husband. With this conclusion we are not able to agree.

In justice to the Court of Appeals and to the parties it is perhaps required that at this point we set out the testimony of Mr. Wallin from which the Court of Appeals infers that he was authorized to accept service of the process in question.

''A. Well, she said she wanted the divorce mighty bad, and asked me to make any kind of a trade possible with the prosecutor in the case against her for embezzlement in order that she might get out of jail. She was very anxious for the divorce at that time, and she told me that it did not matter to her about what was done with the property, or what happened to him or anything about it, that she just wanted to be loose from him. The way I managed to get her released from jail, her husband agreed to pay the amount involved in the embezzlement if she would release her claim from anything he had. She was to get out of jail and leave the country, and her husband was to be responsible for any claim that might be brought against her.

''Q. What was John Keicher to receive under this agreement? A. He was not to receive anything except

his freedom from any claim she might have on any possessions that he had.

"Q. Now, at that time you represented Mrs. Keicher? A. Yes, sir, I carried the news between her and her husband, and finally got that agreement out of them and got her out of jail as a result of their getting together on that thing.

"Q. Did Mrs. Keicher before she left direct you to go ahead with the divorce suit to its conclusion? A. I don't remember that she gave me any directions about it. She got out of jail and left pretty soon afterward, but she had repeated so many times to me that she wanted her freedom and her liberty from him, and she further stated that she didn't want anything he had, or him either, as I remember, she expressed it.

"Q. Did you later, after she left, receive any communication from her or her daughter to dismiss her lawsuit, that is, the divorce suit? A. I don't remember ever receiving any communications from her after that time.

"Q. Did you ever receive a letter from her daughter directing you to dismiss her divorce action? A. I don't have any knowledge of that fact."

It is to be noted that at the time the events related by Mr. Wallin transpired no cross bill had been filed and so far as his evidence indicates there was no threat of a cross bill. It is to be gathered from this proof that upon the wife waiving all claims to alimony, claims against her husband's estate, and claims against his property, her divorce suit would be allowed to proceed without contest. Certainly nothing in Mr. Wallin's testimony tends to show that the wife authorized the attorney to accept service on a cross bill which charged her with adultery and upon which pleading her vested estate as a tenant by the entirety was taken away from her. Summing up the

wife's directions to him, Mr. Wallin quoted her as saying "she wanted her freedom and her liberty from him, and she further stated that she didn't want anything he had, or him either, as I remember she expressed it." There was no suggestion in any language Mr. Wallin ascribed to Mrs. Keicher that she was giving up anything of her own.

Notwithstanding this very dubious authority, Mr. Wallin accepted service on the cross bill for Mrs. Keicher and permitted a decree *pro confesso* to be taken against her. While his good faith in the matter is not questioned, it seems to us that he exceeded the authority given him by his client. Being thus without authority to accept service for this cross defendant, she was not brought before the court on the cross bill and the court was without jurisdiction to pass a decree against her on that pleading. We agree with the chanecllor as to this.

The question then comes up as to what are the rights of this wife against her husband's estate. Is she entitled to dower, homestead, year's allowance and exemptions? We think she is entitled to none of these benefits.

The record in the divorce case was filed herein by the complainant. Reference to the proof therein shows this woman to have been guilty of adultery. The Court of Appeals so found and its conclusion is not challenged. Such misconduct deprives her of the above rights in her husband's estate. As to the estate by the entirety, her rights in that were vested, and we know of no rule of law by which her subsequent moral delinquencies would deprive her of such a vested right.

Going over these claims in detail, the textbooks point out that by the statute of Westminster II, passed in 1285 (13 Ewd. 1, chap. 34), the English Parliament enacted

that, "if a wife willingly leave her husband and go away, and continue with her advouterer," she is to be barred of her dower, unless her husband should afterward forgive her and take her back. This statute seems to have been accepted as the law in many of the common law states. See Note, 71 A. L. R. 278. By the North Carolina statute and the Act of Cession, this statute was no doubt part of the law of North Carolina and became part of the law of the territory later organized as the State of Tennessee, and by the Constitution of 1796 became part of the law of this State. The North Carolina statutes and our early constitutional provision are fully discussed in *Shute* v. *Harder,* 9 Tenn. 3, 24 Am. Dec. 427, and need not be further considered here.

As to homestead, it has been expressly held in this State that an adulteress loses such right in the estate of her husband. This was so ruled in *Coe* v. *Nelson* (Tenn. Ch. App.), 59 S. W. 170, where it was said: "The mere fact that a woman is, in a dry technical sense, the wife of a man, does not entitle her to homestead in his property. If, although the mere formal relation exists, the actual relation has ceased for years, and she has, without cause, abandoned him, and been unfaithful to her marital vows, and by her shameless living and conduct unfitted herself for a rightful return to her husband's embraces, she is neither in policy and good morals, nor in the sense of the law, entitled to homestead in his property. By such conduct she has forfeited all right to his protection, all right to be received and treated as a member of his family, and consequently all right to the benefit of his property."

As a matter of fact, adultery on the part of the wife, as well as abandonment of her Tennessee residence, was a ground for denying her homestead in *Prater* v. *Prater,* 87 Tenn. 78, 9 S. W. 361, 10 Am. St. Rep. 623,

In line with the foregoing, many authorities, which we are content to follow, hold that desertion or abandonment is a bar to any right to share in the estate of a deceased spouse. See cases collected in 71 A. L. R. 285.

This Court has quite recently held that abandonment or withdrawal from the family by a wife deprives her of the exemptions that she might claim as a widow. *Martin v. Petty,* 183 Tenn. 343, 192 S. W. (2d) 823.

A year's support for the widow, as we have frequently pointed out, is in lieu of the husband's duty to provide that support during his lifetime. Certainly when the wife has left him and has lived in adultery with another man, the husband is under no duty to support her and she cannot claim a year's support from his estate after his death.

The result of the whole case is that we hold the wife entitled as the surviving tenant by the entirety to the house and lot owned by her and her husband in Greeneville. She is not, however, entitled to anything from his estate. The only difference between our decree and that of the Court of Appeals is that we award her the whole of the Greeneville property mentioned while the Court of Appeals only awarded her half thereof.

Modified as indicated, the decree of the Court of Appeals will be affirmed and the costs of the case divided.