IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2014 Session

**MICHAEL MORGAN v. SUPERIOR CATERING SERVICES, ET AL.**

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0730     W. Frank Brown, Chancellor**

---

**No. E2014-00005-COA-R3-CV – Filed April 7, 2015**

---

The underlying claim in this appeal concerns age discrimination. The action was filed initially against a single defendant. Three additional defendants were later added, but the plaintiff served process for them on the attorney for the initial defendant, instead of the individual defendants, a fact about which the added defendants learned only a few days prior to the trial. The trial ensued after the court refused to grant a continuance. A jury found all the defendants liable. The trial court awarded the plaintiff $70,000. The defendants collectively filed a motion for a new trial and raised the issues of insufficient service and the inadmissibility of direct evidence. In its first order, the trial court granted the defendants' motion for a new trial. The plaintiff thereafter filed a motion to alter or amend, after which the court reversed its prior ruling granting the new trial and reinstated the jury verdict. The defendants appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Charles G. Taylor, Knoxville, Tennessee, for the appellants, Superior Catering Services, Connelly Dean Cofer, Lynda Cofer, and Dean's Coffee Service.

Harry F. Burnette and Donna J. Mikel, Chattanooga, Tennessee, for the appellee, Michael Morgan.

**OPINION**

**I. BACKGROUND**

This age discrimination action initially was filed in September 2008 by the

plaintiff, Michael Morgan ("Morgan") against Superior Catering Services ("Superior").[1] At the time of the alleged discrimination in 2007, Superior existed as a proprietorship owned by Connelly Dean Cofer ("Dean") and his father-in-law. The business is not incorporated and operates out of an office in Chattanooga. At the same location, another proprietorship, owned by Dean and called "Dean's Coffee Service" ("DCS"),[2] is operated.[3] During the relevant period, Dean's wife, Lynda Cofer ("Lynda"), was an employee or agent of Superior and did not own any interest in the businesses.

In his complaint, Morgan, then age 60, alleged that he applied for a salaried position with Superior as a "route driver" on an established route. He contends he was encouraged instead to establish a new route as an independent contractor. The salaried route driver position was given to a younger employee. According to Morgan, when he interviewed at Superior, Dean informed him that the company would not hire route drivers over 45 years old, despite the applicant's years of relevant experience. Morgan asserts this statement constitutes direct evidence of age discrimination. No allegations were raised regarding Lynda.

After being served with the complaint, Dean hired attorney James D. Purple to defend Superior. Edward A. Love was their personal attorney, but Dean and Lynda believed Mr. Purple would be a better "business attorney" to represent Superior in the age discrimination case. On October 24, 2008, on behalf of Superior, Mr. Purple filed an answer to Morgan's complaint.

In November 2009, 14 months after Morgan's complaint was filed, it is alleged that Dean received a shotgun blast to the face during an attempted robbery.[4] Lynda later related that as a result of the incident, Dean suffered a stroke, loss of memory, loss of most of his eyesight, and loss of use of his right hand. He was in the hospital for five months and had to learn to walk and talk again. After the shooting, Dean was unable to return to work, could no longer drive an automobile, and was considered disabled. As a result of her husband's injuries and disability, along with her father's death, Lynda took over management of the businesses.

Approximately two years later, in September 2011, discovery depositions were scheduled in Morgan's lawsuit. It appears that because of his injuries, Dean had little memory of the events surrounding Morgan's claim. It therefore was stipulated that Dean

---

[1] According to testimony, Superior is a wholesale business that prepares food and sells it to food truck drivers.

[2] DCS is a retail business consisting of five food trucks. DCS bought food from Superior.

[3] As proprietorships, the debts must be borne by the proprietor. *See* 14A Tenn. Prac. Legal Forms Business Organizations § 12:1.

[4] Morgan notes that no medical evidence has been filed or offered to show the extent of Dean's injuries.

was unable to testify.  Since Lynda was not a defendant in the litigation, she was deposed as a witness.

At the deposition, Lynda related that she was the individual who decided not to hire Morgan.  She testified as follows:

Q   . . . [W]ere you the one that made the choice not to hire him?

A   Yes.

Q   And why did you not hire him?

* * *

A   I did not hire him because I didn't think he was ambitious and I didn't think he would do a good job.

Q   Okay.  And upon what basis did you conclude that he was not ambitious?

A   Because when he delivered to me from Hostess Cakes, he made several comments about trying to get out of work and filling in and not running a route, that it was easier than getting out there and running a route.  I remembered that.  I still remember it today.

Q   Okay.  What do you recall that he said?

A   About trying to get out of work?

Q   About whatever it is that you say you recall.

A   I remember him telling me that he was just there filling in for somebody and he would rather do that than get out and run a route.  It was easier.  He can do as he pleases. . . .

Lynda signed the discovery responses "Lynda Cofer, Manager, Superior Catering Services."

Following that deposition, Dean and Lynda assert they heard nothing from Mr. Purple for almost two years.  Due to the passage of time, they erroneously assumed that the lawsuit against Superior had been dismissed.  Unbeknownst to the Cofers, the

litigation was continuing without their knowledge, with the matter scheduled for trial in January 2013.

Morgan eventually filed two motions in limine. Relying on Lynda's deposition testimony, he argued that because of Dean's "severe health impairments," Mr. Cofer should not be allowed to testify at trial. It further was asserted by Morgan that the jury should not be allowed to hear the reason for Dean's impairment or the details of the "robbery . . . and the injuries resulting therefrom." No objection to these motions in limine was filed by Mr. Purple, and he never informed his client, Superior, or the Cofers about them. The motions were granted by the trial court.

In January 2013, Morgan moved to amend his complaint, asking the court to allow him to add Dean and Lynda personally as additional defendants to the lawsuit, together with Dean's Coffee Service. Despite the fact that the one-year statute of limitations for age discrimination had expired, Mr. Purple did not object to the amended complaint, and the court allowed Dean, Lynda, and DCS ("the New Defendants") to be added. The court directed that the "Defendant [sic] shall be served with the Amended Complaint after this Order is entered."

Morgan thereafter attempted to serve the New Defendants by delivering summonses on May 6, 2013, to Superior's attorney, "Jim Purple Esq." at his office. Nowhere on the summonses served was there any notation that Mr. Purple was the agent or attorney for the New Defendants, or that he had authority to accept service of process for them. None of the New Defendants were ever notified that the litigation was still active and that they had been added as parties. Dean[5] and Lynda were never served personally with process.

Mr. Purple initially did not answer the amended complaint, and Morgan's counsel filed a motion for default, alleging that the May 6, 2013 service on Mr. Purple was valid service on the New Defendants. Thereafter, two months later, Mr. Purple filed an answer to the amended complaint on behalf of Superior and also on behalf of the New Defendants. No objection was raised to the improper service on the New Defendants. Mr. Purple again did not advise the New Defendants that they had been named parties in the litigation, and he did not tell them that he was filing an answer on their behalf.

At a pretrial conference, despite the fact that Lynda was not an owner of the

---

[5]Rule 4.04(2) of the Tennessee Rules of Civil Procedure contains special requirements for serving process on an incompetent person. Even though Morgan had previously alleged in his motions in limine that Dean was not competent to testify as a result of his permanent impairment, no attempt was made to serve Dean as an incompetent person pursuant to the provisions of 4.04(2).

businesses at the time of the alleged discrimination, Mr. Purple also agreed without objection to a jury instruction that charged the jury as follows:

> There are four Defendants in this case.  Two are businesses and two are business owners.  For purposes of this lawsuit, the four Defendants are to be treated as one.  If you find that one of the Defendants is liable, then all of the Defendants are liable.

In the subsequent pretrial order, the trial court directed the parties to mediate on the afternoon before the scheduled trial date of July 23, 2013.  Thereafter, just four days before trial, Mr. Purple spoke with Lynda for the first time in almost two years and she learned that the lawsuit was still pending.  At a meeting in Mr. Purple's office on Sunday evening, July 21, 2013, Lynda was told to attend the mediation scheduled for the next day and to appear for trial the following day if the mediation was not successful.  It was at this time she learned that she and her husband, together with DCS, had been added as additional defendants to the litigation without their knowledge or consent.  Mr. Purple further informed her that because Dean had been found to be incompetent, her husband could not attend the trial.

Understandably, Lynda left the meeting extremely upset.  Following her attendance at the unsuccessful mediation, Lynda and Dean called their personal attorney, Mr. Love, to request his help.  According to the attorney, Dean was crying and begging for Mr. Love to appear in court with them the following morning to get the case postponed.  Mr. Love agreed to appear with the New Defendants and explain their situation to the court.  No transcript is available for the pretrial meeting because Mr. Purple neglected to hire a court reporter.[6]  However, according to Mr. Love, he advised the trial court of Dean's incompetency and asked that a guardian ad litem be appointed to protect Mr. Cofer's interests.  He also requested the court allow a continuance.

The court denied Mr. Love's motions and the trial began as scheduled.  Mr. Purple continued to serve as the attorney for Superior and represented the New Defendants in a de facto capacity, as the added defendants were forced to proceed without their own attorney.

Despite asserting that Mr. Cofer was not competent to testify, Morgan related the alleged hearsay statements made by Dean to the jury.  Dean, meanwhile, was denied the

---

[6]While the trial was underway and the jury was being selected, Mr. Purple, in open court and in the presence of the jury, used his cell phone trying to locate a court reporter.  One eventually arrived after the trial had begun.

opportunity to come into court to refute the statements. No objection was raised to the improper hearsay testimony by Mr. Purple.

Additionally, Morgan moved to exclude defense witness Larry Fisher because Mr. Purple had not filed either a witness list or an exhibit list as required by the scheduling order. Morgan's motion was granted in part, with the trial court ruling as follows:

> THE COURT: Well, let me make several comments. One this is a terrible position to be in as a trial judge. Second, the local rules require that all witnesses, their names, addresses, et cetera, et cetera, be listed and that Witness List be filed ten business days before trial. Morgan's did this back in January. The Defendant has not done that. . . . Therefore, I think the most equitable thing is to allow Mr. Fisher to testify but he is limited to that material which was previously disclosed in his interrogatory answers furnished by the Defendant.

Accordingly, the court limited the scope of Mr. Fisher's testimony to what was contained in a "two sentence" response in Superior's answers to interrogatories. The jury was advised that the court was limiting Mr. Fisher's testimony because of Mr. Purple's failure to follow the rules, stating as follows:

> [Mr. Fisher's testimony] . . . is going to be different than what . . . [Mr. Purple said in his opening statement] because, as is true of life, sometimes we learn other things later. But, under our rules, if you don't tell the other side that there has been some new development, some new items learned, you are not supposed to use those, and our rules are designed for there not to be any surprises, not to be any sandbagging, so to speak. . . .

During the trial, Mr. Purple offered no exhibits into evidence, and an unprepared Lynda essentially was his only witness. She testified as follows:

> A      Mr. Morgan came to apply for a job, and when he walked in, I had already known him before, I had met him about three different times when he had delivered my order from Hostess Brands, that was a cake order –
>
> Q      All right. Tell us what happened on those occasions then.
>
> A      Well, there's only one time that stood out in my mind and that was when he, he came in, and, usually, the delivery man would be in a hurry to go to his next stop, but since he was just filling in I reckon he didn't have to go anywhere else.

Q      Who did he work for?

A      Hostess Brands, it's a cake company.

Q      And were they a vendor of yours?

A      Yes, they delivered on Monday mornings about five o'clock.

* * *

Q      What happened?

A      And he just plopped on the counter and was just bragging about his cushy job and how easy it was and he didn't have to run a route. That stuck in my mind, but that's not why I did not hire him.

Lynda declared that Morgan was not offered an established route because of his appearance and personality, stating as follows:

He was a very sad person, unhappy. I was looking for energetic, good with people, a people person, and neat, and he had a scruffy beard and bad attire to be looking for employment, and that just did not go over well with me.

* * *

. . . [Y]ou have to smile, you have to be happy to go out here and meet customers. You form a bond with these people, they are your customers, they are like family, if you are out there for a quite a while. You always know their name. They know your name. You know what sports their children play, if they're going through a divorce, if they found a new mate, whatever, and you've got to be jolly, you've got to be happy.

Lynda's testimony contained a number of inconsistencies, as she attempted to respond to questions for which she was unprepared.

Following the trial, the jury returned a verdict in favor of Morgan against Superior and the New Defendants in the amount of $70,000. A judgment in that amount was entered on August 2, 2013. Thereafter, Superior terminated Mr. Purple as its attorney, and the collective defendants hired Charles Taylor to represent them.

Two weeks later, Morgan filed a motion for attorney fees, court costs, and discretionary costs. In response, the defendants observed that the trial had lasted only one and a half days with the parties taking only two discovery depositions -- both on the same day -- but Morgan was requesting $73,948.50 in fees and $685.40 in costs. On August 30, 2013, counsel for the defendants filed a motion for new trial citing five grounds.

After hearing argument on the pending motions, the trial court entered a memorandum opinion and order on October 23, 2013. As to the asserted ground of "Insufficient Service of Process" on the New Defendants, the court agreed that Morgan's service of process on the New Defendants, made by serving Mr. Purple, was insufficient and violated Tennessee Rules of Civil Procedure 4.04(1). The trial court stated as follows:

> The Court agrees with the Defendants' contention that service upon an attorney is insufficient service of process for purposes of Rule 4.04(1). Tennessee case law, as well as federal case law applying the substantive law of Tennessee, have held that service of a summons on a party's attorney, is insufficient service of process. . . .

However, even though it agreed that service on Mr. Purple was not valid, the court determined that any objection the New Defendants had to insufficient service was waived by Mr. Purple when he failed to object in the unauthorized answer he filed for Dean, Lynda, and DCS without their authority or knowledge. The trial court concluded as follows:

> Although the Court agrees with Defendants' contention that service of process was insufficient, the Defendants' objection is untimely. Under Tennessee Rules of Civil Procedure 12.08, "[a] party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto . . . .

Furthermore, the court ruled that the New Defendants had waived their right to argue that Mr. Purple was not their attorney because "Mr. Purple filed an answer on their behalf." Another reason given was that "Lynda Cofer appeared for trial where Mr. Purple argued on behalf of the Cofers, Superior, and Dean's Coffee Service."

The trial court did find one ground meritorious -- Morgan's improper introduction

of hearsay testimony in violation of Tennessee Code Annotated section 24-1-202.[7]   The court held as follows:

> The purpose of the Dead Man's Act, and therefore presumably of §24-1-202, is to "prevent the surviving party from having the benefit of his own testimony, when by death [or incompetency, in the case of §24-1-202] of his adversary, his representative was deprived of his executor's version of the transaction or statement."   In Plaintiff's own Motion in Limine No. 2, he states that "Mr. Cofer has no memory of the events leading up to this lawsuit due to an injury he sustained in a robbery."   Plaintiff cannot use Mr. Cofer's impairment as both a sword and a shield.   The purpose of §24-1-202 is to prevent a competent party from having the benefit of testifying regarding a transaction with an incompetent party, when the incompetent party cannot give his version of the transaction or statement. . . . [T]he fact that Plaintiff used Mr. Cofer's incompetency as a method to keep him from testifying is enough to overcome the strong presumption against exclusion. Plaintiff cannot first request that Mr. Cofer be excluded from testifying due to Mr. Cofer's lack of competency, and then proceed to testify regarding Mr. Cofer's hearsay statements.   To allow such testimony is directly against the purpose of §24-1-202 and Tennessee Rules of Evidence 103(d), it was plain error to admit the statements of Mr. Cofer.

(Citations omitted.).   The trial court found that the improper admission of Morgan's hearsay statements was not harmless error and without that testimony, Morgan could not have met his burden of proof:

> The Court holds that if the . . . [plaintiff's hearsay testimony] had been excluded, Mr. Morgan could not have met his burden of proof to show that the proffered reason [for his not getting the job he wanted] was pretextual. Mr. Morgan offered no evidence that the reasons had no basis in fact, that the reasons did not actually motivate the decision to not hire Mr. Morgan as a driver for an established route, or that the reasons were insufficient to motivate the decision to not hire Mr. Morgan as a driver for an established route.   Therefore, the court finds that based solely on circumstantial evidence offered, a reasonable trier of fact could not have found that Mr. Morgan met his burden of proof to show age discrimination.   Therefore, the

---

[7]In the new trial motion, relief also was sought based upon:  (1) The failure of the court to appoint a guardian ad litem for Dean and to continue the trial date; (2) The numerous mistakes and errors committed by Mr. Purple and his unauthorized representation of the New Defendants; and (3) The fact that the verdict was against the weight of the evidence.  The court declined to grant a new trial on any of these three grounds.

admission of the direct evidence, Mr. Morgan's statements regarding Mr. Cofer's hearsay statements, was not harmless error. The admission of the testimony was plain error warranting reversal.

The trial court additionally observed that had it denied the new trial motion, it would have approved Morgan's request for attorney fees in the amount of $69,350, and discretionary costs in the amount of $627.90.

Morgan thereafter filed a motion asking the court to alter and reverse its previous order granting a new trial. A copy of the transcript of Lynda's trial testimony was submitted with the motion. Morgan argued that the jury verdict was more than supported by the circumstantial evidence of discrimination and pretext because Lynda's testimony was not "credible." In response, the defendants argued that, before a defendant can be held liable for age discrimination based solely on the credibility of a witness, it is for a jury and not the court to decide whether or not the witness is being truthful. In the present case, they asserted that the jury had not been allowed to weigh Lynda's credibility in the absence of the improperly admitted hearsay evidence.

On December 17, 2013, the trial court entered a second memorandum opinion and order in which it affirmed the previous ruling that Morgan had improperly introduced the hearsay statements allegedly made by Dean. This time, however, the court ruled that even if the jury had not heard and considered the improper hearsay testimony, it could have found Lynda's testimony "was unworthy of credence." As a result, the trial court reversed its previous order, denied the motion for a new trial, reinstated the jury's verdict for $70,000, and awarded attorney fees and costs in the amount of $69,977.90. In this appeal, Morgan notes that no evidence to contest the fee application was presented.

Superior, Dean, Lynda, and DCS thereafter filed this timely notice of appeal.

## II. ISSUES

We restate the issues raised by the appellants in this appeal as follows:

(1)     Did the trial court err in not granting a new trial based upon insufficient service of process on the New Defendants.

(2)     Did the trial court err by improperly applying the "harmless error" rule, and by holding that Morgan was entitled to a verdict based solely on the credibility of Lynda's testimony, without submitting that issue to the jury.

(3)     Did the trial court err by not granting a new trial based upon the mistakes, inadvertence, and excusable neglect of Superior's attorney, and his unauthorized representation of the New Defendants.

## III.  STANDARD OF REVIEW

The trial court's rulings regarding admissibility of evidence are reviewed under an abuse of discretion standard, and may only be overturned if the discretion is arbitrarily exercised or abused.  *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 263-64 (Tenn. 1997).

Our standard of review of questions of law is de novo without a presumption of correctness afforded to the lower court's conclusions of law.  *State ex rel. Pope v. U.S. Fire Ins. Co.,* 145 S.W.3d 529, 533 (Tenn. 2004) (citing *State v. Williams*, 38 S.W.3d 532, 535 (Tenn. 2001)).  As to the findings of fact, the standard of review is de novo upon the record with a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise.  *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

It is well-settled in Tennessee that "[t]he propriety, scope, manner, and control of the examination of witnesses is a matter within the discretion of the trial judge, which will not be interfered with in the absence of an abuse thereof.  A wide discretion in this matter is necessarily left to the court."  *Coffee v. State*, 216 S.W.2d 702, 703 (Tenn. 1948).  A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining.  *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

A party is entitled to reversal of the jury's verdict only if the trial court's error would have "more probably than not affected the judgment or would result in prejudice to the judicial process."  Tenn. R. App. P. 36(b); *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 544 (Tenn. 2008); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007).  Specifically, Rule 36(b) of the Tennessee Rules of Appellate Procedure states:

> A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.  When necessary to do substantial

justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

## IV.  DISCUSSION

### A.

### Insufficient Service of Process

The trial court's jurisdiction of the parties is acquired by service of process. Accordingly, proper service of process is a requisite step in a lawsuit. *Watson v. Garza*, 316 S.W.3d 589, 593 (Tenn. Ct. App. 2008).

Rule 4.04(1) of the Tennessee Rules of Civil Procedure, which governs the personal service of process on individual defendants, provides as follows:

> The plaintiff shall furnish the person making the service with such copies of the summons and complaint as are necessary.  Service shall be made as follows:
>
> (1)  Upon an individual other than an unmarried infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, whose name shall appear on the proof of service, or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

As noted in *Watson*, **"**[t]he record must establish that the plaintiff complied with the requisite procedural rules, and the fact that the defendant had actual knowledge of attempted service does not render the service effectual if the plaintiff did not serve process in accordance with the rules." *Watson*, 316 S.W.3d at 593 (citing *Wallace v. Wallace*, No. 01A01-9512-CH-00579, 1996 WL 411627, at *2 (Tenn. Ct. App. July 24, 1996)).  "The Tennessee Rules of Civil Procedure govern the service of process, and the Supreme Court has held that the Rules of Civil Procedure are 'laws' of this state, in full force and effect . . . ." *Watson*, 316 S.W.3d at 593 (quoting *Estate of McFerren v. Infinity Transport, LLC*, 197 S.W.3d 743, 747 (Tenn. Workers Comp. Panel 2006) (citing *State v. Hodges*, 815 S.W.2d 151, 155 (Tenn. 1991)).

In the context of serving process, the record must contain "evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant." *Arthur v. Litton Loan Servicing L.P*, 249 F.Supp.2d 924, 929 (E.D. Tenn. 2002); *Watson*, 316 S.W.3d at 596-97. Acting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process. *Arthur*, 249 F.Supp.2d at 929. Nor is the mere fact of acceptance of process sufficient to establish agency by appointment. *Id.* Thus, "[t]he defendant's attorney is not deemed an agent appointed to receive service of process absent a factual basis for believing that such an appointment by the defendant has occurred." *Id.*

Mr. Purple was not the attorney for Dean, Lynda, or DCS, and they did not expressly authorize him to accept service of process on their behalf. Regardless of what Mr. Purple might have thought was his authority, acting as Superior's attorney did not automatically make him agent for the New Defendants for receiving service of process. *Arthur*, 249 F.Supp.2d at 929; *see Keicher v. Mysinger*, 198 S.W.2d 330, 331 (Tenn. 1946) (holding that an attorney is not authorized by law to accept service of process for a client without authorization). Further, the fact that Mr. Purple accepted service of process for the New Defendants did not, in and of itself, bind the New Defendants to the court's jurisdiction. *Hall v. Haynes*, 319 S.W.3d 564, 573 (Tenn. 2010); *see Vanhooser v. Ling*, 872 S.W.2d 913 (Tenn. Ct. App. 1993), in which a panel of this court held as follows:

> [T]he Supreme Court held that an attorney's employment to bring suit does not authorize him to accept service of process in defendant's cross action . . . . Even more obvious is the justice and reason of the rule that authority of an attorney to bring suit does not include authority to waive service of process in a suit brought by strangers to the suit being handled by the attorney. . . .

*Vanhooser*, 872 S.W.2d at 916.

The trial court properly determined that the delivery to Mr. Purple of the summonses and complaints for the New Defendants did not comply with Rule 4.04(1) of the Tennessee Rules of Civil Procedure. Mr. Purple did not have express or implied authority to accept service of process on behalf of the New Defendants.

Even though the trial court correctly concluded that Morgan had not complied with the Tennessee Rules of Civil Procedure, and that service on Mr. Purple was "insufficient" to bring the New Defendants into the litigation, the court nevertheless held

- 13 -

that the New Defendants had waived their right to object to service. The trial court gave two reasons for finding such a waiver.

## Waiver

First, the court held that the New Defendants' objection to service was "untimely," and that Rule 12.08 of the Tennessee Rules of Civil Procedure provides that objections to service must be raised either in a pre-answer motion or in the answer. It was held by the court that since Mr. Purple did not file a pre-answer motion, or object to service in his answer to the amended complaint, the New Defendants had "waived" the right to object to sufficiency of service.

"As a general rule, defects in process, service of process, and return of service may be waived." *Faulks v. Crowder*, 99 S.W.3d 116, 125 (Tenn. Ct. App. 2002). Two essential requirements are needed for there to be an effective waiver: (1) knowledge of the right being waived, and (2) the grant of authority to waive the right. A party cannot waive a right that they do not know they have. *Reed v. Washington Cnty. Bd. Of Educ.*, 756 S.W.2d 250, 255 (Tenn. 1988) ("[a] waiver is a voluntary relinquishment by a party of a known right." Waiver "may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct. . . ." However, if an individual does not know of his rights or if he fails to understand them he cannot waive those rights." *Reed*, 756 S.W.2d at 255 (citations omitted); *Arista Records, LLC v. Chumley*, No. M2007-00834-COA-R9-CV, 2008 WL 2557368, at *5 (Tenn. Ct. App. June 24, 2008). The party asserting waiver bears the burden of proving that the party against whom waiver is asserted has, "by a course of acts and conduct, or by so neglecting and failing to act, . . . induce[d] a belief that it was [the party's] intention and purpose to waive." *Kentucky Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 499 (Tenn. Ct. App. 1999) (quoting *Baird v. Fidelity-Phenix Fire Ins. Co.,* 162 S.W.2d 384, 398 (1942)). "In order to establish waiver by conduct, the proof must show 'absolute action or inaction inconsistent with the claim or right' waived." *Id.* (quoting *Koontz v. Fleming*, 65 S.W.2d 821, 825 (Tenn. Ct. App. 1933)).

In the present case, Mr. Purple's failure to object to service in his answer to the amended complaint did not waive any rights that the New Defendants had, since, at the time the answer was filed, the New Defendants had no idea that they had been sued or that an answer was being filed for them. Without such knowledge by the New Defendants, they could not have voluntarily relinquished their rights.

## Apparent Authority

The trial court, in holding that Mr. Purple waived the New Defendants' right to object to service, apparently concluded that Mr. Purple had the apparent authority to make the waiver. In Tennessee, however, "apparent authority must be established through the acts of the principal rather than the agent." *Franklin Distrib. Co., Inc. v. Crush Int'l (U.S.A.), Inc.*, 726 S.W.926, 931 (Tenn. Ct. App. 1986); *Boone v. Gibson*, No. E2003-00226-COA-R3-CV, 2004 WL 367621, at *5 (Tenn. Ct. App. Feb. 27, 2004) ("Apparent authority of an agent must be determined by the acts of the principal and not those of the agent."). As noted previously, whatever actions Mr. Purple may have taken on his own, and whatever he may have believed was his authority, are of no consequence. Only the actions of the New Defendants could have clothed him with the apparent authority to waive their rights in the amended answer. Since the New Defendants had no knowledge that they had been added as parties and that Mr. Purple was acting on their behalf, it is clear that they did not confer apparent authority upon him sufficient to waive their rights.

## Appearance

The second reason that the trial court gave for not granting a new trial based upon insufficient service was that "Lynda Cofer appeared for trial where Mr. Purple argued on behalf of the Cofers, Superior, and Dean's Coffee Service."

In *Dixie Savings Stores, Inc. v. Turner*, 767 S.W.2d 408 (Tenn. Ct. App. 1988), this court held that "if a party makes a general appearance and does not take issue with venue, adequacy of service, personal jurisdiction, or other similar matters, the courts customarily find the party has waived its objections to these matters." *Dixie Sav. Stores*, 767 S.W.2d at 410. The Tennessee Rules of Civil Procedure do not define what constitutes a general appearance. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 99 (Tenn. 1984). In *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994), the Tennessee Supreme Court held that "courts should only find a general appearance that waives a defendant's right to contest personal jurisdiction when the defendant has recognized the proper pendency of the cause by making a motion that goes to the merits or by filing an answer, without challenging personal jurisdiction." *Id.* at 677.

It is true that Lynda appeared in court on the day of trial, two days after she first learned that she was a defendant in the litigation. However, she appeared primarily in an attempt with the help of Mr. Love to get the trial continued, so that she, her husband, and DCS could obtain counsel of their own. Secondarily, she appeared as the only

representative and witness for Superior. It was only after the court denied the continuance that Lynda reluctantly participated in the trial.

In our view, under the facts of this case, the actions of Lynda did not constitute a general appearance. We must conclude that the New Defendants were never before the trial court as parties.

## B.

### Harmless Error

Tennessee Code Annotated section 24-1-202 provides as follows:

> 24-1-202. Transactions with mentally incompetent party. – It is not lawful for any party to any action, suit, or proceeding to testify as to any transaction or conversation with, or statement by, any opposite party in interest, if such opposite party is incapacitated or disqualified to testify thereto, by reason of idiocy, lunacy, or insanity, unless called by the opposite side, and then only in the discretion of the court . . . .

Rule 103(d) of the Tennessee Rules of Evidence provides that

> (d) Plain Error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

In its first memorandum opinion and order entered on October 23, 2013, the trial court held that it was improper and reversible error for Morgan to have testified before the jury as to statements purported to have been made to him by Dean. The trial court stated that Morgan

> cannot use Mr. Cofer's impairment as both a sword and a shield. The purpose of §24-1-202 is to prevent a competent party from having the benefit of testifying regarding a transaction with an incompetent party, when the incompetent party cannot give his version of the transaction or statement.

The court further held that "24-1-202 . . . [was] intended to protect parties like Mr. Cofer who cannot explain their own hearsay statements," and that the "[p]laintiff cannot first request that Mr. Cofer be excluded from testifying due to Mr. Cofer's lack of

- 16 -

competency, and then proceed to testify regarding Mr. Cofer's hearsay statements." Additionally, the court held that the admission of the testimony was "plain error" under Tennessee Rules of Evidence 103(d) as to warrant reversal even though Mr. Purple did not object to the testimony at trial.

The court specifically noted that the admitted testimony was not harmless error and affected a substantial right of the defendants, holding as follows:

> The court holds that if the direct evidence had been excluded, Mr. Morgan could not have met his burden of proof to show that the proffered reason was pretextual. Mr. Morgan offered no evidence that the reasons had no basis in fact, that the reasons did not actually motivate the decision to not hire Mr. Morgan as a driver for an established route, or that the reasons were insufficient to motivate the decision to not hire Mr. Morgan as a driver for an established route. Therefore, the court finds that based solely on circumstantial evidence offered, a reasonable trier of fact could not have found that Mr. Morgan met his burden of proof to show age discrimination. Therefore, the admission of the direct evidence, Mr. Morgan's statements regarding Mr. Cofer's hearsay statements, was not harmless error. The admission of the testimony was plain error warranting reversal.

In the second memorandum opinion and order entered on December 17, 2013, the trial court affirmed its previous ruling in which it had held that Morgan's hearsay testimony regarding conversations with Mr. Cofer was "plain error." However, the court determined after review of the transcript of Lynda's trial testimony that the hearsay testimony was "harmless error" because other properly admitted evidence was sufficient for the jury to have found in favor of Morgan. The trial court held that, because of the "weaknesses, implausibilities, inconsistencies, incoherencies . . . [and] contradictions in [Mrs. Cofer's testimony]," there was "sufficient evidence [aside from the improper hearsay testimony] for a reasonable factfinder . . . to sustain the . . . finding of liability for intentional discrimination."

Instead of applying the "other sufficient evidence" standard, the correct standard should have been based on "whether the error likely had an injurious effect on the jury's decision-making process." The difference between these two standards has been discussed by the Tennessee Supreme Court as follows:

> We recognize that "any time an appellate court conducts harmless error review it necessarily engages in some speculation as to the jury's decision making process; for in the end no judge can know for certain what factors led to the jury's verdict." Still, an appellate [or trial] court's purpose in a

harmless error analysis is to ascertain, to the best of its ability, the actual basis for the jury's verdict. Accordingly, ***the issue of whether an error is harmless does not turn upon the existence of properly admitted evidence that is sufficient to affirm a conviction. The key question is whether the error likely had an injurious effect on the jury's decision-making process. If the answer is yes, the error cannot be harmless.***

*State v. Dotson*, 254 S.W.3d 378, 388-89 (citations omitted) (emphasis added).

This rule applies in civil cases as well, as the Tennessee Supreme Court has held that an error committed in a civil trial is not harmless "if the trial court's error would have more probably than not affected the judgment or would result in prejudice to the judicial process." See *Flax*, 272 S.W.3d at 543. Further, the same rule is found in Rule 36(b) of the Tennessee Rules of Appellate Procedure, which states as follows:

(b) Effect of Error. A final judgment from which relief is available and other wise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more likely than not affected the judgment or would result in prejudice to the judicial process. . . .

As argued by the defendants, the use of the "likely injurious effect on the verdict" standard would have found that the introduction of Morgan's improper hearsay testimony likely affected the jury's verdict. As the trial court noted in its memorandum opinion of October 23, 2013, "[i]f Mr. Cofer's out of court statements were excluded, then Mr. Morgan would only have circumstantial evidence as a basis for his claim." Accordingly, we conclude that the jury was very likely influenced by the un-refuted hearsay testimony of Morgan.

Without Morgan's improper hearsay statements, the relevant issue was the credibility of Lynda's testimony. Where a case must be decided based solely on the credibility of a witness, that issue should be decided by the jury and not the court. *Finks v. Gillum*, 273 S.W.2d 722, 727 (Tenn. Ct. App. 1954).

In our view, the improperly admitted evidence was so significant as to affect the jury's verdict. Further, in our view, the jury's verdict was not supported solely by the evidence from Lynda. Accordingly, we conclude that the trial court's decision to allow the improper evidence prejudiced the judicial process and more probably than not affected the judgment.

Our holdings on these two issues pretermit discussion of the remaining issue on appeal.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and vacate the jury's verdict. The case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellee, Michael Morgan.

_____
JOHN W. McCLARTY, JUDGE